--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

**H**Only the Westlaw citation is currently available.
 United States Court of Appeals, Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
 Daryl LAWRENCE, Defendant-Appellant/Cross-Appellee.
 **Nos. 06-4105, 06-4626, 07-3004.**

Argued: April 30, 2008.
Decided and Filed: Feb. 11, 2009.

**Background:** Following partial granting of motion to suppress, 2005 WL 2840739, and conviction of capital murder, defendant moved for new trial. The United States District Court for the Southern District of Ohio at Columbus, Gregory L. Frost, J., 477 F.Supp.2d 864, vacated verdict of death and ordered new sentencing hearing. Government appealed and defendant cross-appealed and moved to dismiss.

**Holdings:** The Court of Appeals, McKeague, Circuit Judge, held that:
(1) district court's order was appealable;
(2) sentencing verdicts were not inconsistent; and
(3) sentence was not based on irrationality or arbitrary factors.

Vacated in part; defendant's motion denied.

West Headnotes

**[1] Statutes 361 ☞241(1)**

361 Statutes
    361VI Construction and Operation
        361VI(B) Particular Classes of Statutes
            361k241 Penal Statutes
                361k241(1) k. In General. Most Cited Cases
The policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Congress intended. 18 U.S.C.A. § 3731.

**[2] Statutes 361 241(1)**

361 Statutes
   361VI Construction and Operation
      361VI(B) Particular Classes of Statutes
         361k241 Penal Statutes
         361k241(1) k. In General. Most Cited Cases

The rule of lenity is applied in favor of a criminal defendant only if a statute remains ambiguous after consideration of its plain meaning, structure and legislative history.

**[3] Criminal Law 110 1023(14)**

110 Criminal Law
   110XXIV Review
      110XXIV(C) Decisions Reviewable
         110k1021 Decisions Reviewable
         110k1023 Appealable Judgments and Orders
         110k1023(14) k. Modification or Correction of Judgment, Sentence, or Record; Resentencing. Most Cited Cases

District court's order vacating murder defendant's death sentence and ordering new capital sentencing proceeding was immediately appealable under statute governing government appeals in criminal cases; statute governing appeal was not ambiguous and was to be liberally construed. 18 U.S.C.A. §§ 3731, 924(c), (j)(1), 2113(a, d).

**[4] Double Jeopardy 135H 32**

135H Double Jeopardy
   135HII Proceedings, Offenses, Punishments, and Persons Involved or Affected
      135Hk32 k. Appeal by Government; Mandamus or Prohibition. Most Cited Cases

Reversal of district court's decision to vacate death sentence and order new sentencing proceeding would result in reinstatement of jury's verdict, rather

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

than another prosecution, and thus appeal of order vacating defendant's death sentence for murder conviction did not offend Double Jeopardy Clause. U.S.C.A. Const.Amend. 5.; 18 U.S.C.A. §§ 924(c), (j)(1), 2113(a, d).

**[5] Double Jeopardy 135H ⌨32**

135H Double Jeopardy
        135HII Proceedings, Offenses, Punishments, and Persons Involved or Affected
                135Hk32 k. Appeal by Government; Mandamus or Prohibition. Most Cited Cases
The Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact. U.S.C.A. Const.Amend. 5.

**[6] Criminal Law 110 ⌨1156(1)**

110 Criminal Law
    110XXIV Review

110XXIV(N) Discretion of Lower Court
        110k1156 New Trial
                110k1156(1) k. In General. Most Cited Cases
The Court of Appeals reviews a district court's decision to grant or deny a new trial for abuse of discretion.

**[7] Criminal Law 110 ⌨1147**

110 Criminal Law
    110XXIV Review
        110XXIV(N) Discretion of Lower Court
                110k1147 k. In General. Most Cited Cases
The district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law.

**[8] Criminal Law 110 ⌨1147**

110 Criminal Law
    110XXIV Review

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Page 4

**110XXIV(N)** Discretion of Lower Court

**110k1147** k. In General. Most Cited Cases

An error of law is by definition an abuse of discretion.

**[9] Sentencing and Punishment 350H ☞1784(1)**

**350H** Sentencing and Punishment
   **350HVIII** The Death Penalty
      **350HVIII(G)** Proceedings
         **350HVIII(G)4** Determination and Disposition
            **350Hk1784** Verdict or Recommendation of Jury
               **350Hk1784(1)** k. In General. Most Cited Cases

Jury verdicts recommending life sentence on one murder count and death sentence on another murder count for defendant convicted of killing police officer during bank robbery were not inconsistent, as required to vacate death sentence; jury determinations that aggravating factors outweighed mitigating factors as to one count and not other count were unanimous. 18 U.S.C.A. §§ 924(c), (j)(1), 2113(a, d), 3593(b)(2)(D).

**[10] Criminal Law 110 ☞1134.53**

**110** Criminal Law
   **110XXIV** Review
      **110XXIV(L)** Scope of Review in General
         **110XXIV(L)4** Scope of Inquiry
            **110k1134.53** k. Verdict and Findings. Most Cited Cases

A threshold question the Court of Appeals must answer when reviewing jury verdict is whether any apparent inconsistency between the jury's verdicts presents a reviewable error. Fed.Rules Cr.Proc.Rule 33, 18 U.S.C.A.

**[11] Criminal Law 110 ☞878(4)**

**110** Criminal Law
   **110XX** Trial
      **110XX(K)** Verdict
         **110k878** Several Counts
            **110k878(4)** k. Inconsistent

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Findings. Most Cited Cases

A jury that inconsistently convicts the defendant of one offense and acquits him of another is as likely to have erred in acquitting him of the one as in convicting him of the other.

**[12] Criminal Law 110 ☞878(4)**

110 Criminal Law
    110XX Trial
        110XX(K) Verdict
            110k878 Several Counts
                110k878(4) k. Inconsistent
Findings. Most Cited Cases

Juries are permitted to acquit out of compassion or compromise or because of their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

**[13] Sentencing and Punishment 350H ☞1658**

350H Sentencing and Punishment
    350HVIII The Death Penalty
        350HVIII(C) Factors Affecting Imposition in General
            350Hk1658 k. Manner and Effect of Weighing or Considering Factors. Most Cited Cases

Jury verdict recommending death sentence for murder of police officer during armed bank robbery was not influenced by irrationality or arbitrary factors, as required to vacate death sentence, although mitigating factor tallies for two murder counts were not identical; mitigating factors were collectively and unanimously deemed to be outweighed by aggravating circumstances, district court instructed jury that conclusion regarding punishment on one murder count did not mean same conclusion should be reached on other count, two death eligible offenses had different culpability requirements, and instructions affirmatively directed jurors to consider mitigating factors qualitatively and make reasoned, even-handed, fair and just decision. 18 U.S.C.A. § 3591 et seq.; 18 U.S.C.A. §§ 924(c), (j)(1), 2113(a, d).

**[14] Sentencing and Punishment 350H**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

🔑**1615**

**350H** Sentencing and Punishment
　　**350HVIII** The Death Penalty
　　　**350HVIII(A)** In General
　　　　**350Hk1613** Requirements for Imposition
　　　　　**350Hk1615** k. Individualized Determination. Most Cited Cases

Before a jury can undertake the grave task of imposing a death sentence, it must be allowed to consider a defendant's moral culpability and decide whether death is an appropriate punishment for that individual in light of his personal characteristics and the circumstances of the offense.

**[15] Criminal Law 110** 🔑**878(4)**

**110** Criminal Law
　**110XX** Trial
　　**110XX(K)** Verdict
　　　**110k878** Several Counts
　　　　**110k878(4)** k. Inconsistent Findings. Most Cited Cases

In some circumstances, inconsistent verdicts may pose a cognizable error if the inconsistency shows that the jury has not followed the court's instructions or that the jury did not speak their real conclusions.

Appeal from the United States District Court for the Southern District of Ohio at Columbus. No. 05-00011-Gregory L. Frost, District Judge.

**ARGUED:**Kort W. Gatterdam, Carpenter, Lipps & Leland, Columbus, Ohio, for Appellant. Elizabeth D. Collery, United States Department of Justice, Washington, D.C., for Appellee.

**ON BRIEF:**Kort W. Gatterdam, Carpenter, Lipps & Leland, Columbus, Ohio, Diane M. Menashe, Diane M. Menashe Co., L.Pa., Columbus, Ohio, for Appellant. Steven L. Lane, United States Department of Justice, Washington, D.C., David DeVillers, Michael J. Burns, Assistant United States Attorneys, Columbus, Ohio, for Appellee.

Before BOGGS, Chief Judge; ROGERS and McKEAGUE, Circuit Judges.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----                                                                                          Page 7
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

## OPINION

McKEAGUE, Circuit Judge.

**\*1** Defendant Daryl Lawrence was convicted of armed bank robbery, attempted armed bank robbery, murder, and firearms charges. Two of the counts, Counts Seven and Eight, charged death-eligible offenses. The jury returned a verdict of life imprisonment on Count Seven and a verdict of death on Count Eight. Ruling on defendant's motion for new trial, the district court held that the jury's verdicts on Counts Seven and Eight were inconsistent. The court vacated the verdict of death on Count Eight and ordered a new sentencing hearing. The government appeals, contending the verdicts are not inconsistent. Lawrence has moved for dismissal of the government's appeal as premature.

For the reasons that follow, we deny Lawrence's motion to dismiss the government's appeal, vacate the district court's order partially granting the motion for new trial, and thereby reinstate the sentence of death originally imposed by the district court on Count Eight.

## I. PROCEDURAL HISTORY

In January 2005, a grand jury in the Southern District of Ohio handed down an eight-count indictment, charging Lawrence with armed bank robbery, attempted armed bank robbery, murder, and firearms offenses. The charges stemmed from four different Ohio bank robberies committed during January, August and September 2004, and January 2005. During the last of these four robberies, Columbus Police Officer Bryan Hurst was shot and killed. Counts Seven and Eight of the indictment alleged death-eligible offenses, violations of 18 U.S.C. § 2113(a), (d), and (e), and 18 U.S.C. § 924(c), (j)(1), respectively. The jury found Lawrence guilty of all charged offenses and found him eligible for the death penalty on Counts Seven and Eight.[FN1] The district

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

court held a sentencing hearing in March 2006. Jurors, in varying numbers, found that Lawrence proved the existence of forty-seven mitigating factors in relation to both Count Seven and Count Eight. Under Count Seven, the jury concluded that the aggravating factors did not sufficiently outweigh the mitigating factors and returned a sentencing verdict of life in prison without possibility of release. Under Count Eight, the jury found that the aggravating factors sufficiently outweighed the mitigating factors and returned a verdict of death.

The district court accepted the jury's sentencing verdicts on Counts Seven and Eight and imposed conforming sentences on those counts in an order entered on March 13, 2006. The court ordered the preparation of a presentence investigation report for the other six convictions. The court sentenced Lawrence to a total of 781 months' imprisonment on Counts One through Six on August 10, 2006. Lawrence moved for a new trial under Fed.R.Crim.P. 33(b)(2) and 45(a) on August 11, 2006. The district court heard oral arguments on the motion in October 2006, and granted Lawrence's motion in part. The court rejected Lawrence's claims of juror bias, double jeopardy, and improper jury instructions, but agreed with Lawrence that the jury's sentencing verdicts on Counts Seven and Eight were inconsistent. The district court vacated the jury's death verdict on Count Eight and ordered a new sentencing hearing pursuant to 18 U.S.C. § 3593(b)(2)(D). *United States v. Lawrence,* 477 F.Supp.2d 864, 867 (S.D.Ohio 2006). The court directed that the new sentencing hearing would take place before a different jury.

**\*2** In appeal No. 06-4626, the United States appeals the order partially granting the motion for new trial, insisting the verdicts are not inconsistent. Lawrence has moved to dismiss the government's appeal. In appeal No. 07-3004, Lawrence cross-appeals the district court's order insofar as it requires a new sentencing hearing as a remedy, rather than ordering a life sentence be imposed on Count Eight.[FN2]

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

## II. ANALYSIS

### A. Government's Appeal

#### 1. *Appellate Jurisdiction*

Lawrence has responded to the government's appeal from the order partially granting the motion for new trial by moving the court to dismiss it. Lawrence contends the order is not appealable because it will not become final until after the new sentencing hearing takes place and ripens into a final judgment of sentence. In support, Lawrence relies mainly on *Andrews v. United States,* 373 U.S. 334, 338-39, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963). In *Andrews,* the Court held that a district court's order vacating a sentence under 28 U.S.C. § 2255 and ordering resentencing was interlocutory and would not become final and appealable until the resentencing occurred. The foundation of the *Andrews* ruling is twofold. The ruling is premised first on the language of § 2255 itself, which expressly allows an appeal to be taken "from the order entered on the motion as from a *final judgment* on application for a writ of habeas corpus." 28 U.S.C. § 2255(d) (emphasis added); *Andrews,* 373 U.S. at 338. Second, the ruling honors "the standards of finality to which the Court has adhered in habeas corpus proceedings" and "the long-established rule against piecemeal appeals." *Andrews,* 373 U.S. at 340. *Andrews* remains good law, having recently been followed in several cases. *See United States v. Futch,* 518 F.3d 887, 894 (11th Cir.2008); *United States v. Hadden,* 475 F.3d 652, 662-63 (4th Cir.2007); *United States v. Stitt,* 459 F.3d 483, 485-86 (4th Cir.2006).

This is not an appeal, however, from an order granting a § 2255 motion to vacate, set aside or correct a sentence. This is an appeal under the Criminal Appeals Act, 18 U.S.C. § 3731, from an interlocutory, post-verdict order partially granting defendant Lawrence's motion for new trial in a capital case. In *Andrews,* the Court recognized that the Criminal Appeals Act has no applicability to an

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

action under § 2255, which is "a separate proceeding, independent of the original criminal case." 373 U.S. at 338. Hence, insofar as *Andrew's* holding is based on the language of § 2255, it has little instructive value in this case. Insofar as *Andrews* represents enforcement of the general rule against piecemeal appeals, its teaching is also limited inasmuch as § 3731, as amended in 1970, was "intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975).

Section 3731 provides in relevant part:

**\*3** In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

18 U.S.C. § 3731. Further, § 3731 expressly provides that its provisions "shall be liberally construed to effectuate its purposes ."The government contends that the district court's order partially granting Lawrence's motion for new trial and requiring a new sentencing hearing is, under the above language, "an appeal from an order granting a new trial as to any part of any one or more counts."Lawrence maintains that a new sentencing hearing on Count Eight is not a "new trial" as to any part of any count.

On this precise question, there is little case law authority. The only ruling directly on point is *United States v. Cerceda,* 172 F.3d 806, 811 n. 3 (11th Cir.1999) (en banc), *cert. denied sub nom. De La Mata v. United States,* 528 U.S. 895 (1999). Noting that § 3731 is to be liberally construed to effectuate its purposes, the Eleventh Circuit held that a district court's orders granting post-judgment motions for new trials

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

and/or sentencing hearings in some twenty-two cases were immediately appealable. *Id.* For jurisdictional purposes, the court drew no distinction between the orders granting new trials and those merely granting new sentencing hearings. That is, the orders granting new sentencing hearings were implicitly treated as orders granting new trials as to "parts" of the counts of conviction.

A similar result was reached by the Eighth Circuit in a capital case, *United States v. Lee,* 274 F.3d 485 (8th Cir.2001). After the jury had returned a verdict of death in the penalty phase, the district court granted the defendant's motion under Fed.R.Crim.P. 33 for a new sentencing phase hearing. The Eighth Circuit entertained the matter as an appeal of a new trial order, reviewed it for an abuse of discretion, reversed the new trial order, and reinstated the sentence of death. *Id.* at 493, 496-97. The defendant did not challenge the court's appellate jurisdiction under § 3731 and the court did not expressly address the matter of jurisdiction. It was presumed that the order granting a new penalty phase trial was properly subject to interlocutory review under § 3731 as an order granting a new trial.

Neither *Lee* nor *Cerceda* includes a definitive analysis of the issue. Yet, the conclusion that an order requiring a new sentencing hearing is an order granting a new trial as to any part of any count is entirely consonant with Congress's stated intention that § 3731 be liberally construed and that government appeals be allowed within the limits of the Constitution. The conclusion is also consistent with this court's past unwillingness to import an "empty formalism" into § 3731. *United States v. Hill,* 55 F.3d 1197, 1199 (6th Cir.1995); *see also United States v. Battisti,* 486 F.2d 961, 967 (6th Cir.1973).

**\*4** Moreover, the conclusion is all the more appropriate where as here, the new sentencing hearing would be a jury proceeding. If the district court's order were deemed unreviewable until after a final judgment of sentence were issued

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

on Count Eight, a death-qualified jury would have to be empaneled to determine again whether a sentence of death is justified. This determination would be made, based on consideration of any aggravating factors established beyond a reasonable doubt and any mitigating factors established by a preponderance of the information, in a proceeding having the hallmarks of a trial on guilt or innocence. *See* 18 U.S.C. § 3593; *Sattazahn v. Pennsylvania,* 537 U.S. 101, 106, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). Considering the nature of federal capital sentencing proceedings, the notion urged by defendant Lawrence that the new sentencing hearing ordered by the district court is not a new trial on any part of Count Eight rings hollow. The argument is overly technical and clearly at odds with Congress's directive that § 3731 be liberally construed to effectuate its purposes.

Defendant Lawrence has not cited a single decision construing § 3731 so narrowly as to exclude a government appeal of a post-judgment order requiring a new sentencing hearing. Instead, he relies on cases in which § 3731 was held not to authorize government appeals of sentencing orders generally, i.e., orders imposing sentences. *See, e.g., United States v. Hundley,* 858 F.2d 58, 62-63 (2d Cir.1988); *United States v. Spilotro,* 884 F.2d 1003, 1005-06 (7th Cir.1989). Indeed, by its terms, § 3731 does not authorize government appeals of sentencing orders.[FN3]Final sentencing orders for offenses committed after November 1, 1987 are appealable under 18 U.S.C. § 3742(b). If the district court had issued an order vacating the sentence of death on Count Eight and imposing a sentence of life imprisonment instead, the government would have appealed directly under § 3742(b). It is precisely because the district court's order partially granting Lawrence's motion for new trial is not merely a final sentencing order that the government had to invoke § 3731. And because it is not a final sentencing order, rulings such as *Hundley* and *Spilotro* are inapposite.

[1][2] Finally, Lawrence argues that, if

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Page 13

"new trial on any part of any count" can be construed so broadly as to mean "new capital sentencing hearing," then § 3731 must be ambiguous and the rule of lenity should be applied to resolve the ambiguity in his favor. The "policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended." *United States v. Boucha,* 236 F.3d 768, 774-75 (6th Cir.2001) (quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)). The rule of lenity is founded on two policies: (a) the notion that the public is entitled to fair warning of the criminal penalties that apply to proscribed conduct; and (b) the notion that the proscribed conduct should be defined by the legislature and not by the courts. *Boucha,* 236 F.3d at 774. The rule of lenity is applied in favor of a criminal defendant only if a statute remains ambiguous after consideration of its plain meaning, structure and legislative history. *Id.*

**\*5** [3] In light of the above analysis, it is clear that the rule of lenity has no application to the present question. First, interpreting § 3731 to determine whether the government may appeal the district court's order immediately, rather than waiting until after the new sentencing hearing is completed, does not implicate the definition of criminal conduct prohibited or the imposition of any harsher penalty. *See Sash v. Zenk,* 428 F.3d 132, 134-35 (2d Cir.2005) (holding rule of lenity irrelevant in interpreting federal statute that defined neither the criminal prohibition nor the penalty imposed and was therefore not a "criminal statute"). Second, as explained above, the task of determining whether the government's interlocutory appeal comes within the scope of § 3731 does not leave us guessing as to what Congress intended. Because Congress has explicitly directed the courts to construe § 3731 broadly to effectuate its purpose of removing barriers to government appeals, we find no ambiguity in applying § 3731 to the present circumstances that would trigger the rule of lenity.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Accordingly, we conclude that § 3731 authorizes the government to appeal the district court's order vacating the original sentence on Count Eight and ordering a new capital sentencing proceeding-as long as the appeal does not offend the Double Jeopardy Clause.

[4][5] The Double Jeopardy Clause is not offended. "[T]he Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact." *United States v. DiFrancesco,* 449 U.S. 117, 130, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *see also United States v. Boesen,* 491 F.3d 852, 855 (8th Cir.2007) (appellate jurisdiction over government's appeal properly exercised because reversal would merely reinstate verdict and not subject defendant to a new trial); *United States v. Genova,* 333 F.3d 750, 756 (7th Cir.2003) ( "[T]he United States may appeal from a judge's order acquitting the defendant after the jury has returned a verdict of guilty, for reversal does not require a new trial."). Although this case involves the jury's sentencing verdict rather than its verdict on guilt or innocence, the principle is the same. Reversal of the district court's decision to vacate the sentence of death on Count Eight and order a new sentencing proceeding would not lead to another prosecution, but would simply result in reinstatement of the jury's verdict.

Accordingly, the government's appeal does not offend the Double Jeopardy Clause and is properly taken under 18 U.S.C. § 3731.

## 2. *Merits: Verdicts Inconsistent?*

### (a) Standard of Review

[6][7][8] This court reviews a district court's decision to grant or deny a new trial for abuse of discretion. *United States v. Gonzales,* 227 F.3d 520, 523 (6th Cir.2000)."The district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

applies the law." *United States v. White, 492 F.3d 380, 408 (6th Cir.2007)* (citing *United States v. Heavrin, 330 F.3d 723, 727 (6th Cir.2003)*). An error of law is by definition an abuse of discretion. *Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

**(b) Reviewability of Inconsistent Verdicts**

**\*6** [9] The district court held that it had discretion under Fed.R.Crim.P. 33 to "vacate any judgment and grant a new trial if the interest of justice so requires." The court further held that the jury's penalty verdicts on Counts Seven and Eight were inconsistent, and that the inconsistency was a product of irrationality that required the court to set aside the verdict on Count Eight. The court concluded there was no valid explanation for the jury's inconsistent findings other than "complete arbitrariness."

[10][11][12] A threshold question we must answer is whether any apparent inconsistency between the jury's verdicts presents a reviewable "error." "[T]he Supreme Court has repeatedly held that a jury *may* announce logically inconsistent verdicts in a criminal case." *United States v. Clemmer,* 918 F.2d 570, 573 (6th Cir.1990) (emphasis added) (citing *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), and *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932)).

Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Powell,* 469 U.S. at 65. It is unclear whose ox has been gored because "[a]

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

jury that inconsistently convicts the defendant of one offense and acquits him of another is as likely to have erred in acquitting him of the one as in convicting him of the other." *United States v. Johnson,* 223 F.3d 665, 675 (7th Cir.2000). Juries are permitted "to acquit out of compassion or compromise or because of 'their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' " *Standefer v. United States,* 447 U.S. 10, 22, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (quoting *Dunn,* 284 U.S. at 393).

Accordingly, inconsistent verdicts are generally held not to be reviewable. *See United States v. Dykes,* 406 F.3d 717, 722 (D.C.Cir.2005) (defendant acquitted on charge of possessing cocaine base found in bedroom but convicted of possessing the marijuana found in the room could not attack verdict of conviction as inconsistent); *United States v. Espinoza,* 338 F.3d 1140, 1147 (10th Cir.2003) ("There are sound reasons, however, not to concern ourselves with the consistency of jury verdicts in criminal cases"); *United States v. Chilingirian,* 280 F.3d 704, 710-11 (6th Cir.2002) (applying *Powell* to trial judge's verdicts convicting defendant of conspiracy to commit money laundering but acquitting him of related mail and wire fraud counts); *United States v. Reyes,* 270 F.3d 1158, 1168 (7th Cir.2001) (refusing to review claim that convictions of substantive offenses were inconsistent with acquittal of conspiracy charge); *United States v. Alicea,* 205 F.3d 480, 484 (1st Cir.2000) (a claim that the jury verdict is internally inconsistent is essentially unreviewable); *United States v. Mitchell,* 146 F.3d 1338, 1343 (11th Cir.1998) (applying *Powell* to defendant's claim that jury's verdict of conviction for violating 18 U.S.C. § 2113(d) was inconsistent with jury's verdict of acquittal on charge of 18 U.S.C. § 924(c)); *United States v. Hart,* 963 F.2d 1278, 1280 (9th Cir.1992) (review for inconsistency is prohibited).

**\*7** In light of these authorities, the district court was on shaky footing to even entertain Lawrence's inconsistent-verdicts challenge. The

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

practical reasons for not doing so noted by the Supreme Court in *Powell* and *Standefer* are no less applicable here. The district court was well aware of these authorities, but concluded that inconsistent verdicts are reviewable if the inconsistency is the "product of irrationality." In support of this conclusion, the court cited *Getsy v. Mitchell,* 456 F.3d 575 (6th Cir.2006) ( "*Getsy I* ").

The district court's reliance on *Getsy I* is problematic for two reasons. First, the *Getsy I* decision was vacated one week after the district court issued its ruling in this case, when the Sixth Circuit granted en banc review. The en banc court went on to reject Getsy's inconsistent-verdicts argument, reaffirming *Powell's* teaching that inconsistent verdicts are generally not reviewable. *Getsy v. Mitchell,* 495 F.3d 295, 307-08 (2007) (en banc) ("*Getsy II*"). The second fundamental reason why the district court's reliance on *Getsy I* is erroneous is that *Getsy* presented an entirely different kind of "inconsistency" than is presented in this case. *Getsy* involved two codefendants charged with the same offenses stemming from the same murder who were tried separately. One defendant was convicted of all charged offenses and was sentenced to death; the other was convicted of some but not all charged offenses and was sentenced to life in prison. Even the panel majority in *Getsy I,* without specifically identifying what was "irrational" about the "inconsistency" before it, recognized that review of a claim of inconsistent verdicts on separate charges against a single defendant-i.e., the very claim presented in this case-would be precluded by *Powell.* *Getsy I,* 456 F.3d at 590. Hence, *Getsy I* affords no support for the district court's analysis.

The district court also relied on the Seventh Circuit's decision in *United States v. Johnson,* 223 F.3d at 675-76. This reliance, too, is misplaced. *Johnson* recognizes that, notwithstanding the general rule that inconsistent verdicts are not reviewable, "a sentence of death imposed under the influence of passion, prejudice, or any other arbitrary factor" must be set aside unless the error is

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Page 18

shown to have been harmless. *Id.* at 676 (citing 18 U.S.C. § 3593(c)(2)(A)). Thus, an inconsistency so serious as to indicate that a verdict is the "product of irrationality" is reviewable. *Id.*

In *Johnson,* where the defendant was charged with two murders, jurors made different findings regarding asserted mitigating factors that were equally applicable to both murders. Yet, these inconsistent *findings* were deemed inconsequential where all jurors unanimously concluded, regarding both murder charges, that the aggravating factors outweighed the mitigating factors. The court observed that the jurors "are required to agree about their verdict, not about every fact."*Id.* Because the jury was in unanimous agreement as to "the bottom line," there was no reason to believe their verdict was the product of irrationality. *Id. See also Wainwright v. Lockhart,* 80 F.3d 1226, 1231-32 (8th Cir.1996) (rejecting challenge based on inconsistent mitigation factor findings where jury unanimously and specifically found that aggravating circumstances outweighed all mitigating

circumstances).

**\*8** The instant facts come squarely within the holding of *Johnson.*Here, although the individual jurors made different findings regarding mitigating factors in relation to the two separate death-eligible offenses, their "bottom line" determinations that the aggravating factors outweighed the mitigating factors as to Count Eight but not Count Seven were unanimous. Here, as in *Johnson,* inconsistencies among individual *juror findings* pose no cognizable problem; it is only when *jury verdicts* are marked by such inconsistency as to indicate arbitrariness or irrationality that relief may be warranted.

**(c) Arbitrariness or Irrationality**

[13] Lawrence maintains and the district court concluded that just such an inconsistency is presented by the difference between these two jury verdicts-one being a sentence of life imprisonment, one being a sentence of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----                                                                    Page 19
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

death-even though the jury was considering the identical set of asserted mitigating circumstances in connection with both offenses. The district court summarized its reasoning as follows:

It is irrational to conclude that Defendant proved a mitigating factor in regard to one count by a preponderance of the evidence, but that he did not meet this burden of proof in regard to another count. The inconsistent findings taint the balancing equation and point to the unavoidable conclusion that irrational, even arbitrary, jury conduct existed. Thus, the end result is that the jury arbitrarily used two different balancing equations to conclude that the aggravating factors sufficiently outweighed the mitigating factors on Count Eight, but not on Count Seven.

*Lawrence,* 477 F.Supp.2d at 870. The government challenges this reasoning and we agree with the objection. However, to discern the fallacy in the district court's reasoning, it is helpful to first review the sentencing process under the Federal Death Penalty Act, 18 U.S.C. §§ 3591 *et seq.*

Sentencing under the FDPA consists of three steps. First, the jury determines whether the defendant committed a death-eligible offense under 18 U.S.C. § 3591. Second, the jury determines whether at least one of the statutory aggravating factors set forth in section 3592 is present. Both of these determinations must be unanimous and must be made upon proof beyond a reasonable doubt. 18 U.S.C. § 3593(c), (d). Third, if the jury finds both a death-eligible offense and one or more of the statutory aggravating factors, the jury considers whether the statutory aggravating factor or factors found to exist, together with any non-statutory aggravating factors found to exist upon proof beyond a reasonable doubt, sufficiently outweigh the mitigating factor or factors found to exist, so as to justify a sentence of death. Section 3593(e). The defendant may present any information relevant to a mitigating factor and it is his burden of establishing

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the existence of any mitigating factor by a preponderance of the information. Section 3593(c). A finding with respect to a mitigating factor may be made by one or more jurors, while a finding with respect to any aggravating factor must be unanimous. Section 3593(d). The jury's overall sentencing verdict must be unanimous. Section 3593(e). That is, in particular, a verdict of death is properly reached only if the jurors unanimously find that the aggravating factors sufficiently outweigh the mitigating factors. Section 3594.

**\*9** In this case, the jury found Lawrence guilty on every count of the indictment, including the two death-eligible offenses in Counts Seven and Eight. Under Count Seven, the jury found Lawrence guilty of attempted bank robbery, with the additional findings that he put in jeopardy the life of some person by the use of a dangerous weapon while engaged in attempting to take the money, and that he killed Bryan Hurst in attempting to commit armed bank robbery or in attempting to avoid apprehension for the commission of armed banked robbery. Under Count Eight, the jury found Lawrence guilty of using or carrying a firearm during and in relation to an attempted armed bank robbery, with the additional findings that he brandished a firearm during and in relation to the attempted armed bank robbery, that he discharged a firearm during and in relation to the attempted armed bank robbery, and that he murdered Bryan Hurst while using or carrying a firearm during and in relation to an attempted bank robbery.

At the eligibility stage, the jury found unanimously that Lawrence met the age factor (eighteen or older), and the four intent factors for Counts Seven and Eight. The jury also unanimously found, for both Counts Seven and Eight, that the government proved beyond a reasonable doubt the presence of two statutory aggravating factors.

At the penalty selection phase, the district court gave preliminary and final instructions. The district court instructed the jury to decide whether the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

government proved the existence of the two asserted non-statutory aggravating factors beyond a reasonable doubt. The district court also instructed the jury that mitigating factors could be found by one, more than one, or all of the jurors. Then each juror was to consider whether the mitigating factors found by him or her were sufficiently outweighed by all the aggravating factors, statutory and non-statutory, found by all of the jurors, so as to justify a sentence of death. The court explained that the jurors were to use the same procedures for both Count Seven and Count Eight, and recommended that they apply the procedure first to Count Seven and then to Count Eight. Further, and significantly, the court instructed the jurors to consider each count separately and independently: "You must consider each count uninfluenced by your decision as to the other count. Your conclusion as to the appropriate punishment on Count 7 does not mean that your conclusion as to the appropriate punishment for Count 8 should be the same."JA 181-82. The court also told the jurors that they could not rely solely on the guilty verdicts from the trial or eligibility phases in making their findings, but could consider evidence presented during those phases along with the evidence presented in the sentencing phase. Finally, the court instructed the jury on the different burdens of proof required for the government to establish non-statutory aggravating factors on the one hand, and for Lawrence to establish mitigating factors on the other.

**\*10** During the sentencing hearing, Lawrence asserted fifty-one potentially relevant mitigating factors for the jury's consideration. The jurors indicated on the verdict forms for Count Seven and Count Eight the number of jurors who found each mitigating factor by a preponderance of the evidence. One or more jurors found forty-seven mitigating factors for both Count Seven and Count Eight. Comparing the jurors' votes on the two counts, the number of jurors who found a particular mitigating factor for Count Seven exceeded the tally for Count Eight for eighteen factors, the tally was the same for twenty-one factors (including four asserted factors which no juror found to be mitigating for either

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

count), and the number of jurors who found a particular mitigating factor for Count Eight exceeded the tally for Count Seven for twelve factors. Most of the tallies that differed did so by one vote. The largest discrepancy was for asserted mitigating factor 45, mercy. Nine jurors found the mercy factor established for Count Seven, while only three found it established for Count Eight.

As to Count Seven, where the jurors, cumulatively, made a total of 338 mitigating factor findings, these mitigating factors were collectively and unanimously deemed *not* to be outweighed by the aggravating factors, and a verdict of life imprisonment was returned. As to Count Eight, where the jurors, cumulatively, made a smaller total of 304 mitigating factor findings, these mitigating factors were collectively and unanimously deemed to be outweighed by the aggravating circumstances, resulting in a verdict of death. A facial comparison of the two jury verdicts thus shows them to be consistent, albeit different; not inconsistent.[FN4]The differences in the mitigation factor

findings do not suggest that either of the two subject sentencing verdicts does anything but "speak the real conclusions of the jury."*See Powell,* 469 U.S. at 64-65.

The facial consistency or rationality of the two verdicts is further substantiated by the fact that the Count Eight offense implicated greater moral culpability than the Count Seven offense. Under Count Eight, the jury found that Lawrence, while using or carrying a firearm during an attempted armed bank robbery, *murdered* Bryan Hurst (i.e., with malice aforethought). Under Count Seven, the jury found that Lawrence, during an attempted armed bank robbery, placed another's life in jeopardy and *killed* Bryan Hurst. The Count Eight malice aforethought element, according to the instructions, required proof beyond a reasonable doubt that Lawrence either killed Hurst "deliberately and intentionally" or acted "with callous and wanton disregard for human life."JA 116. The jury was not required to find malice aforethought to find Lawrence guilty under Count Seven.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Further, the jury was instructed, in weighing the mitigating and aggravating factors, to render a "reasoned" decision on the "propriety" of life imprisonment or death with reference to the "highest ideal of the law," "justice," based on "an even-handed weighing" of circumstances in an "effort to reach a fair result."JA 215-16. The district court instructed the jury that its decision as to the appropriate sentence on Count Seven did not require it to reach the same decision on Count Eight. It stands to reason that the jury very likely and very reasonably took the more culpable *mens rea* element of the Count Eight offense into account in weighing the mitigating and aggravating factors and determining the appropriate sentence for each offense.

**\*11** Yet, when the government makes this very argument, Lawrence cries "Foul!" He insists, consistent with the district court's reasoning, that if the jury engaged in such analysis, it would have acted contrary to the instruction that the weighing process be confined to the aggravating and mitigating circumstances. The district court refused to conclude that the jury had so acted because the standard presumption that the jury followed the court's instructions had not been rebutted. *Lawrence, 477 F.Supp.2d at 868*. *See Hill v. Mitchell, 400 F.3d 308, 325 (6th Cir.2005)* (observing that federal courts generally presume that juries follow their instructions). Thus presuming that the jury had refrained from "improperly considering" the differences between the two death-eligible offenses, the court concluded that the differences in mitigating factor findings and the difference between the two verdicts could only be explained as products of irrationality.

Such reasoning is fundamentally flawed. First of all, the jury instructions did not tell the jurors to abandon their common sense in evaluating the mitigating and aggravating factors. Nor, contrary to the district court's recollection, did the instructions direct the jury *not* to consider the elements of the underlying offenses for which the asserted

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Page 24

mitigating circumstances allegedly mitigated the defendant's culpability. To the contrary, the instructions explicitly permitted the jurors to consider *all* the evidence presented: "In making all the determinations you are required to make in this sentencing phase of the trial, however, you may consider any evidence that was presented during the trial phase and the eligibility phase, as well as evidence that will be presented during this sentencing phase."JA 182. The information thus properly considered by the jury necessarily included evidence it had found persuasive beyond a reasonable doubt that Lawrence had killed Bryan Hurst with malice aforethought. That the jury would have considered this evidence is entirely consistent with the requirement that the penalty selection process be expansive enough to permit the jury to make an individualized assessment of the defendant's character and culpability based on all relevant evidence. *See Tuilaepa v. California,* 512 U.S. 967, 972-73, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994).

[14] Further, as indicated, the instructions affirmatively directed the jurors to consider the mitigating factors qualitatively and make a reasoned, even-handed, fair and just decision. The instructions defined "mitigating factor" as "simply additional information about Daryl Lawrence's life or character or about the circumstances surrounding the offense that would suggest, in fairness and mercy, that a sentence of death is not the most appropriate punishment and that a sentence of life in prison without any possibility of release is the more appropriate punishment."JA 208, 213. This definition is roughly equivalent to that provided in the Federal Death Penalty Act, where "mitigating factors" is defined simply as "factors in the defendant's background, record or character or any other circumstance of the offense that mitigate against imposition of the death sentence."18 U.S.C. § 3592(a)(8). It is also consistent with the long-recognized notion that "before a jury can undertake the grave task of imposing a death sentence, it must be allowed to consider a defendant's moral culpability and decide whether death is an appropriate punishment for

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

that individual in light of his personal characteristics and the circumstances of the offense." *Abdul-Kabir v. Quarterman,* 550 U.S. 233, 127 S.Ct. 1654, 1674, 167 L.Ed.2d 585 (2007).

**\*12** It follows that, in order for a juror to have found the existence of an alleged mitigating factor established by a preponderance of the evidence, he or she needed to determine not just whether the facts alleged to be mitigating were sufficiently proven, but also whether those facts were properly considered as mitigating defendant's culpability. This calculus could hardly be made without reference to the culpability already found to be established beyond a reasonable doubt when the jury found Lawrence guilty of each of the two death-eligible offenses.

The district court ignored this two-dimensional requirement of a mitigating factor finding. In fact, the district court's determination that the verdicts are inconsistent is premised on the fact that the mitigating factor tallies for Counts Seven and Eight are not identical. That is, the district court reasoned that because the alleged mitigating factors were the same for each count and the proofs in mitigation were the same, the jurors' findings should have been the same; otherwise, the findings are irrationally inconsistent. In this respect, the district court ignored the recognized prerogative of each juror to determine the weight to be given each asserted mitigating factor, which necessarily included determining, in the context of the given offense conduct, whether and to what extent the factor was in fact mitigating of culpability. *See Davis v. Coyle,* 475 F.3d 761, 773 (6th Cir.2007) (citing *Eddings v. Oklahoma,* 455 U.S. 104, 114-15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)).

Consideration of the list of asserted mitigating factors clearly illustrates the point. For instance, asserted mitigating factor 34 states, "Daryl Lawrence is a human being."There can be little doubt that all twelve jurors readily concluded that Lawrence's humanity was established by a preponderance of the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

information. Yet, only four jurors found the factor established for Count Seven, and only five found it established for Count Eight. That most jurors found the factor not established clearly indicates that they did not view the established fact of Lawrence's humanity as carrying, in and of itself, any mitigating weight. This determination was within each juror's prerogative. Similarly, asserted mitigating factor 8 states, "Daryl Lawrence's biological father died in 1981."Presumably there was no factual dispute about this occurrence and it was established by a preponderance of the information, yet no single juror found the fact to be mitigating. Facially, this, too, appears to be an entirely rational conclusion.

Of course, the verdict forms do not disclose *why* the individual jurors' findings varied from count to count on thirty out of fifty-one asserted mitigating factors. Yet, clearly, discrepancies among jurors' findings do not, in themselves, evidence irrationality or the influence of some arbitrary factor. There could be any number of plausible explanations why twelve different jurors might or might not view any of fifty-one various factors to be mitigating of criminal culpability in relation to either of the death-eligible offenses. It was out of recognition that "such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into jury deliberations that courts generally will not undertake," that the *Powell* Court reaffirmed the general rule that inconsistent verdicts are not reviewable. 469 U.S. at 66. *See also United States v. Agofsky,* 458 F.3d 369, 373-74 (5th Cir.2006) (speculation is insufficient to show arbitrary influence).

**\*13** Moreover, as mentioned above, there is a significant difference between inconsistencies in individual *juror findings* and inconsistencies between *jury verdicts.*Even the two cases on which Lawrence relies most heavily in urging an exception to the general rule (i.e., that inconsistent verdicts are not reviewable) recognize that, irrespective of discrepancies in juror findings, if the jury unanimously agreed on the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

determination whether the aggravating circumstances outweighed the mitigating factors, there is no irrationality or arbitrariness. *See Johnson,* 223 F.3d at 676 ("But of course jurors disagree among themselves; that is nothing new. They are required to agree about their verdict, not about every fact."); *Wainwright,* 80 F.3d at 1231-32.

Both *Johnson* and *Wainwright* teach that irrespective of discrepancies in juror findings, such "inconsistency" is not shown to be materially arbitrary or irrational where the "bottom line" jury verdicts are unanimous and not inconsistent. Here, too, the bottom line verdicts on the two counts are clearly unanimous. They are different, but quite reasonably so, considering that jurors' mitigation findings differed and the degree of criminal culpability involved in the two offenses differed. In other words, the difference between the jury's bottom line verdicts does not bespeak logical inconsistency or irrationality, but rather, quite the opposite. To the extent the differences in the jurors' mitigation findings remain unexplained and may give rise to speculation, the fact remains that there is no evidence that any arbitrary factor "most likely" influenced the bottom line verdicts. *See Agofsky,* 458 F.3d at 373 (holding that death sentence is not to be vacated absent showing that arbitrary factor "most likely" influenced the sentence).

[15] In conclusion, we reiterate that, in some circumstances, "inconsistent verdicts" *may* pose a cognizable error if the inconsistency shows that "the jury has not followed the court's instructions" or that "the jury did not speak their real conclusions." *Powell,* 469 U.S. at 64-65. The instant facts do not present either concern. In fact, the above scrutiny of the verdicts confirms the opposite conclusion, i.e., that the jury, in rendering two different sentencing verdicts, *did* follow the court's instructions and *did* speak their real conclusions. Hence, the verdicts are not "inconsistent" in any cognizable sense. Even if they were, they would not be reviewable absent some showing of irrationality, of which there is none. We therefore hold that the district court erred

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

as matter of law when it set aside the jury's verdict of death on Count Eight.

Understandably, Lawrence is not satisfied with this analysis. Yet, while we reject his inconsistent-verdicts challenge, protection from demonstrated jury irrationality is still available through appellate review of the sufficiency of the evidence. *Id.* at 67; *Getsy II,* 495 F.3d at 307. Lawrence will have the opportunity to test the legal sufficiency of the verdicts in subsequent appellate proceedings, which have been held in abeyance pending this ruling.

## B. Lawrence's Cross-Appeal

**\*14** In appeal No. 07-3004, Lawrence also appeals the district court's order partially granting his motion for new trial insofar as it requires a new sentencing hearing as a remedy, rather than simply ordering a life sentence be imposed on Count Eight. Because we have concluded that the district court erred in vacating the verdict of death on Count Eight, there will be no new sentencing hearing. Lawrence's cross-appeal is thus rendered moot.

## III. CONCLUSION

Accordingly, Lawrence's motion to dismiss the government's appeal from the order partially granting his motion for new trial (No. 06-4626) is **DENIED.**

Further, the district court erred as a matter of law, and therefore abused its discretion, when it set aside the verdict of death on Count Eight. Even if the asserted inconsistency of the sentencing verdicts on Counts Seven and Eight were deemed to present a reviewable question, Lawrence has failed to demonstrate that they are "inconsistent" and has failed to demonstrate that the Count Eight verdict was influenced by irrationality or any arbitrary factor. The district court's order vacating the verdict of death on Count Eight is therefore **VACATED** and the sentence of death originally imposed by the district court is **REINSTATED.**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

Finally, Lawrence's cross-appeal (No. 07-3004) is **DISMISSED** as moot.

in abeyance pending resolution of the issues relating to the appeals from the order partially granting the motion for new trial.

FN1. Specifically, under Count Seven, the jury found Lawrence guilty of attempted armed bank robbery and of putting a person's life in jeopardy by use of a dangerous weapon during the attempted robbery; and of killing a person either during the attempted robbery or in attempting to avoid apprehension for the robbery. Under Count Eight, the jury found Lawrence guilty of using, brandishing, discharging a firearm and, with malice aforethought, murdering a person during an attempted armed bank robbery.

FN2. Also consolidated with these appeals is appeal No. 06-4105, in which Lawrence challenges his conviction and sentence on various other grounds. Proceedings in this appeal are held

FN3. As the *Hundley* court recognized, however, several courts had nevertheless interpreted § 3731 more broadly, holding that its listings of appealable orders were nonexclusive, and that the government could appeal any order as long as doing so would not offend the Double Jeopardy Clause. *Hundley,* 858 F.2d at 62.

FN4. We recognize, consistent with the instructions given the jury, that the weighing of mitigating and aggravating circumstances is not to be "a mechanical process." JA 215. Rather, the factors should be considered "qualitatively" and the decision "must be a reasoned response." *Id.* Still, a mere tallying and comparison of the mitigating factors found by the jurors for each of the two counts

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

--- F.3d ----
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))
(Cite as: 2009 WL 321631 (C.A.6 (Ohio)))

facially undermines the charge of inconsistency or irrationality and actually tends to confirm the rationality of the difference between the two verdicts.

C.A.6 (Ohio),2009.
U.S. v. Lawrence
--- F.3d ----, 2009 WL 321631 (C.A.6 (Ohio))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.