NOS. 06-9000 & 06-9001

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant

v.

DAVID PAUL HAMMER,

Appellant/Cross-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

REPLY BRIEF FOR THE UNITED STATES

_____

MARTIN C. CARLSON
United States Attorney
Middle District of Pennsylvania

FREDERICK E. MARTIN
Assistant U.S. Attorney
Middle District of Pennsylvania

GWYNN X KINSEY, JR.
Attorney
U.S. Department of Justice
Room 336
1331 F Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-9721

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.        The district court erred in finding a violation of *Brady* and setting aside Hammer's death sentence, where Hammer and counsel were aware of his allegedly-suppressed history of sexual bondage.  . . . . . 1

II.      Hammer's claim that the jury erroneously failed to find "undisputed" mitigating factors was barred by the procedural default and non-retroactivity doctrines, and lacked merit  . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Word Count, Identical Compliance, and Virus Check . . . . . . . . . . 13

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Banks v. Dretke*, 540 U.S. 668 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Brown v. Sanders*, 546 U.S. 212 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Flamer v. Delaware*, 68 F.3d 736 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 10

*Fullwood v. Lee*, 290 F.3d 663 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Government of Virgin Islands v. Harrigan*, 791 F.2d 34 (3d Cir. 1986) . . . . . . . 10

*Murray v. Carrier*, 477 U.S. 478 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Strickler v. Greene*, 527 U.S. 263 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 9

*Stringer v. Black*, 503 U.S. 222 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Diaz*, 922 F.2d 998 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Hammer*, 25 F. Supp. 2d 518 (M.D. Pa. 1998) . . . . . . . . . . . . . . 6

*United States v. Hammer*, 226 F.3d 229 (3rd Cir. 2000), *cert. denied*, 532 U.S. 959 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Hammer*, 404 F. Supp. 2d 676 (M.D. Pa. 2005) . . . . . . . . . . . . . 6

*United States v. Pellulo*, 399 F.3d 197 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . 2

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), *cert. denied*, 546 U.S. 810 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Zuazo*, 243 F.3d 428 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 2

*West v. Johnson*, 92 F.3d 1385 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

**FEDERAL RULES**

Fed. R. App. P. 30(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Third Circuit Local Rule 30.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 06-9000 & 06-9001

_____

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant

v.

DAVID PAUL HAMMER,

Appellant/Cross-Appellee

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

_____

REPLY BRIEF FOR THE UNITED STATES

_____

I.

THE DISTRICT COURT ERRED IN FINDING A VIOLATION OF
*BRADY* AND SETTING ASIDE HAMMER'S DEATH SENTENCE,
WHERE HAMMER AND COUNSEL WERE AWARE OF
HAMMER'S ALLEGEDLY-SUPPRESSED HISTORY OF SEXUAL
BONDAGE.

Hammer echoes the district court's conclusion that the FBI 302 reports of

the interviews of inmates Albert Ray Johnson, Royce Lee Fowler, and Gaylon Don

Ball contained important evidence of Hammer's own history of homosexual

bondage that defense trial counsel could have used to counter the government's

argument in support of the substantial planning and premeditation statutory

aggravating factor. Hammer's Step-3 brief at 3-38. Hammer maintains that the

failure to disclose the reports was a violation of *Brady v. Maryland*, 373 U.S. 83

(1963). This assertion fails for several reasons.

1. "Evidence is not considered to be suppressed if the defendant either

knew or should have known of the essential facts permitting him to take advantage

of any exculpatory evidence." *United States v. Perdomo*, 929 F.2d 967, 973 (3d

Cir. 1991); *see United States v. Pellulo*, 399 F.3d 197, 216 (3d Cir. 2005); *United

States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990); *United States v. Zuazo*, 243

F.3d 428, 431 (8th Cir. 2001); *United States v. Roane*, 378 F.3d 382, 402 (4th Cir.

2004), *cert. denied*, 546 U.S. 810 (2005); *Fullwood v. Lee*, 290 F.3d 663, 686 (4th

Cir. 2002); *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996). As it pertains

here, this rule is not, as Hammer argues, a "constructive knowledge exception" to

*Brady*. Step-3 Brief at 30. Instead, each of the FBI 302 reports in question

described Hammer's own bondage-related homosexual activities and his

conversations about these activities with other inmates housed in close proximity

to him. JA 13630-46; *see* Government's Second-step Brief at 31-32, 61-62. That

these were matters within Hammer's *actual, personal* knowledge cannot seriously

be questioned, and nothing in the district court's findings suggests otherwise.

Hammer argues that he lacked knowledge that the inmates had reported

their observations to investigators, and that, in any event, defense counsel lacked the required knowledge of his bondage activities. Step-3 brief at 30, 34. Although the FBI 302 suggest that Hammer was indeed aware of what the other inmates saw and heard, whether the defendant was aware that several inmates imprisoned with him were interviewed and what they reported is irrelevant for purposes of *Brady*. The critical factor is that Hammer was well aware of his demonstrated proclivities for bondage-oriented homosexual activities and the identities of the various inmates who had been housed in close proximity to him over his years of incarceration. Moreover, Hammer had knowledge of his own sexual activities – together with those of his various sex partners – that was far superior to that of the various inmates interviewed by the federal agents. While the district court states that Hammer's knowledge is irrelevant unless his attorneys shared in that knowledge, the fact remains that Marti was murdered under circumstances that at least suggested homosexual activity, and defense counsel certainly argued that theory to the jury at trial.[1] In such circumstances, it was hardly unreasonable to expect defense counsel to quiz Hammer about his

---

[1] The court's dismissal of Hammer's knowledge as irrelevant amounts to a new constitutional rule of criminal procedure that is barred in this collateral proceeding by the *Teague* non-retroactivity doctrine. *West*, 92 F.3d at 1399.

relationship with Marti and his sexual proclivities.[2]

Hammer incorrectly argues that *Perdomo* was effectively overruled by *Strickler v. Greene*, 527 U.S. 263 (1999), and *Banks v. Dretke*, 540 U.S. 668 (2004). Step-3 Brief at 30. In fact, neither *Strickler* nor *Banks* dealt with material within the actual knowledge of a defendant as in the present case, and nothing in the language of either opinion suggests an intention to overrule the rule of *Perdomo* and similar decisions.

*Strickler* involved non-disclosure of documents from police investigative files contradicting prosecution witness Anne Stoltzfus's confident trial testimony identifying Strickler as the perpetrator of a forcible abduction of the victim, who was thereafter killed. What made this material subject to *Brady* was its importance as impeachment of a trial witness. *Strickler*, 527 U.S. at 282 n.21. In contrast to

---

[2] Hammer unconvincingly asserts that he "has been incarcerated for the vast majority of his adult life, and there was no way for him to know what aspects of his sexual proclivities prisoners were aware of or willing to share with the defense." Step-3 brief at 30. However, as noted in the government's opening brief, the defense elicited Hammer's sexual activities from its own inmate witnesses and on cross-examination of the government's inmate witnesses. Ultimately, the testimony disclosed Hammer's sexual relationships with six separate inmates. Step-2 brief at 18-19. The defense-prepared video of Hammer's hypnosis session, and trial counsel's notes as introduced at the hearing below, JA 14039, likewise reflected counsel's knowledge of Hammer's homosexual bondage. Trial counsel evidently viewed the latter information as more harmful than helpful as they conspicuously elected not to develop evidence of bondage on redirect examination of defense witness Michael Smith after the government elicited Hammer's bondage practices on cross-examination. Step-2 brief at 19-20.

Hammer's personal knowledge of his own sexual activities, there was no evidence that Strickler actually knew of materials impeaching Stoltzfus's inculpating trial testimony. Indeed, the notion of actual or constructive knowledge was discussed in *Strickler* only in connection with the distinct issue of whether Strickler's *Brady* claim was barred by the procedural default doctrine. *Id*. at 280-89. The procedural default doctrine is separate from the merits of a *Brady* claim, *see id*. at 280-96, and the government has not asserted procedural default as defense to Hammer's *Brady* claim. As we have noted, *Strickler* rejected the petitioner's *Brady* claim on the merits. Step-2 Brief at 64-66.

*Banks* likewise did not involve non-disclosure of information actually known by the defendant. As in *Strickler*, the issue of actual or constructive knowledge was discussed in *Banks* only in connection with the distinct issue of whether Banks's *Brady* claim was barred by the procedural default doctrine. *Banks*, 540 U.S. at 692-98. Banks also undisputedly lacked knowledge of the suppressed information, which reflected that one cooperating witness at Banks's trial, Farr, had been a police informant at the time he and Banks conspired to commit a robbery that culminated in a capital murder, and that another witness, Cook, had rehearsed his testimony with prosecutors. *Id*. at 692-98. Banks lacked knowledge of the information contradicting Farr and Cooks's denials at trial on these points. *See id*.

5

2. Hammer attempts to limit the "actual knowledge" rule to cases where the defendant is free from a disabling mental condition. Step-3 brief at 35. Although the cited cases do not qualify the rule in this way, we recognize that courts have on occasion relieved incompetent defendants in certain contexts from the risk of non-compliance with procedural requirements. As this Court and the district court have consistently noted, however, there has been no genuine doubt that Hammer has remained competent at all relevant times. *United States v. Hammer*, 226 F.3d 229, 232 n.2 (3rd Cir. 2000), *cert. denied*, 532 U.S. 959 (2001); *United States v. Hammer*, 404 F. Supp. 2d 676, 793 (M.D. Pa. 2005); *United States v. Hammer*, 25 F. Supp. 2d 518, 527 (M.D. Pa. 1998).

3. Under *Strickler*, a defendant must convincingly show that "'there is a reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense," thereby placing "the whole case in such a different light as to undermine confidence in the verdict." 527 U.S. at 289-90. Especially given the defense-introduced videotape of "Jocko's" confession to deliberately killing Marti and Hammer's subsequent guilty plea to premeditated murder, it appears highly doubtful that the FBI 302 reports of Hammer's homosexual bondage could have had such an impact.[3] The defense

---

[3] Even now, Hammer persistently clings to the insanity defense theory, even as he alternatively seeks to exploit an "accident" theory of defense. In

treatment of witness Michael Smith is reliable, contemporaneous evidence that the

defense had no interest in exposing the jury unnecessarily to Hammer's interest in

sexual bondage, and this applies with at least as much force to the evidence of

Hammer's using carefully braided restraints for this purpose. Step-2 brief at 62.

4. Although the defense thus could not have relied on the FBI 302 reports

to show that Marti was killed accidentally, Hammer maintains that defense

counsel could at least have relied on the reports to counter the government's

argument supporting the substantial planning and premeditation statutory

aggravating factor. According to Hammer, the government relied on Hammer's

use of braided restraints as the "centerpiece" of its case for substantial planning

and premeditation, in four ways:

- the time and effort involved in manufacturing the restraints
- the level of forethought shown by Hammer's knowledge of the need to disable Marti
- Hammer's use of a "whole lulling system" to convince Marti to be restrained
- the restraints rebutted the defense assertion that the killing was an unplanned act

Step-3 brief at 5-6.

As noted, however, the defense was evidently aware through defense

---

closing argument at the Section 2255 hearing, well after the defense had received
the FBI 302 reports, the defense continued to advance the multiple personality
defense. JA 11401-02.

witness Michael Smith of Hammer's bondage practices but elected not to develop this evidence on redirect examination, apparently recognizing that a long pattern of sexual bondage, concluding in a deliberate murder, would only have served to cast the defense case in a bad light. Hammer counters that the Michael Smith testified only to bondage, but did not mention braided restraints, as did the FBI 302 reports. Step-3 brief at 28.

In fact, only one of the four inmates covered by the FBI 302 reports, Albert Johnson, mentions braided restraints in particular, and the only other inmate to mention bondage, Royce Fowler, unlike Michael Smith, simply heard Hammer say he enjoyed bondage and never observed Hammer engaging in that activity. JA 13630-46. Further, Hammer overstates the significance of Albert Johnson's passing reference to braided restraints, which undercut the government's substantial planning and premeditation argument only by the slightest increment beyond that inherent in Michael Smith's testimony, which, significantly, did not exclude Hammer's use of braided restraints. Of the four ways in which the government is said to have argued the restraints as evidence of substantial planning and premeditation, Step-3 brief at 5-6, only the "manufacturing" point was implicated exclusively by the braiding process.

Hammer is also incorrectly portrays the restraints as the "centerpiece" of the government's substantial planning and premeditation argument. Even under the

government's theory, the restraints by themselves were not unambiguous evidence of Hammer's *mens rea*; Hammer indicated to Marti that he was braiding them with intention to create a hostage scenario. Far less ambiguous than the restraints was the other evidence of Hammer's intent, including the gag and toe-nail clipper, his pre-murder statements to Leonard Yager and Stephen Classen, and his post-murder notes, statements, confession, and, ultimately, his guilty plea to premeditated murder. Step-2 brief at 6-15; Step-3 brief at 17 n.4. In light of all this, Albert Johnson's passing reference to Hammer's use of braided restraints for homosexual sex with inmates other than Marti did not place "the whole case in such a different light as to undermine confidence in the verdict." *Strickler*, 527 U.S. at 289-90.

5. Hammer relies on a defense-prepared compilation of verdicts in other federal death penalty cases to support his conclusion that juries have returned death sentences in 33% of the cases in which the "substantial planning and premeditation" statutory aggravating factor was found proven, whereas juries have returned death sentences in 21% of the cases in which that factor was found not proven. Step-3 brief at 18 n.5. From this he extrapolates that the substantial planning and premeditation statutory aggravating factor must have "heavyweight" status in jury deliberations generally, thus showing, in his view, the particular sensitivity of his *Brady* claim.

Even assuming, *arguendo*, that the proffered data are reliable and properly considered for the first time on appeal (which we dispute in our opposition to Hammer's motion to supplement the appendix with this data), the statistical underpinnings of Hammer's assertion are extremely suspect.[4] Because Hammer does not attempt to compare the impact of the substantial planning and premeditation factor to the corresponding impact of any other statutory aggravating factor, we have no way of assessing the importance of that factor in particular. It seems entirely reasonable to assume that cases where a death sentence has been rejected are more likely also to involve rejection of one or more of the alleged statutory aggravating factors, regardless of what those factors may have been. Nothing can be drawn from the modest differences in the claimed 33% and 21% death sentence rates. *Strickler*'s "reasonable probability" standard is a case-specific question of law for the court, not one for statisticians, much less non-experts attempting to be statisticians.

6. Hammer cites *Stringer v. Black*, 503 U.S. 222 (1992), and *Flamer v.*

---

[4] As noted in the government's opposition to Hammer's motion to amend the appendix, his data compilation may not be considered on appeal because it is not contained in the record before the district court. *Government of Virgin Islands v. Harrigan*, 791 F.2d 34, 36 (3d Cir. 1986) (compilation of data from other cases in the same district not a part of the district court record and therefore not properly included in the appendix on appeal); *see* Fed. R. App. P. 30(a)(1); Local Rule 30.3.

*Delaware*, 68 F.3d 736 (3d Cir. 1995) (en banc) for the proposition that

"[e]mploying an invalid aggravating factor in the weighing process 'creates the

possibility of randomness' by placing a 'thumb on death's side of the scale, thus

creating the risk of treating the defendant as more deserving of the death penalty.'"

Step-3 brief at 20. The Supreme Court has modified this aspect of *Stringer*. *See*

*Brown v. Sanders*, 546 U.S. 212, 221 (2006). There was nothing inherently

invalid about the substantial planning and premeditation factor and the jury was

entitled to consider Hammer's planning and premeditation as part of the

circumstances of the offense. *See id.*

II.

HAMMER'S CLAIM THAT THE JURY ERRONEOUSLY FAILED
TO FIND "UNDISPUTED" MITIGATING FACTORS WAS
BARRED BY THE PROCEDURAL DEFAULT AND NON-
RETROACTIVITY DOCTRINES, AND LACKED MERIT.

Regarding the government's separate claim that the district court erred in

granting relief based on the jury's failure to find supposedly undisputed mitigating

factors, Hammer asserts the government's alleged *Brady* violation as "cause" to

excuse his procedural default of this claim on direct appeal. Step-3 brief at 43-48.

This assertion fails. First, the *Brady* claim lacks merit and thus does not constitute

"cause." Second, the alleged *Brady* violation did not amount to an "external

factor" that affirmatively "impeded" Hammer's efforts to present his mitigating

11

factors claim, *Murray v. Carrier*, 477 U.S. 478, 488-89 (1990), and therefore does not excuse Hammer's default.

CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court reverse the judgment of the district court insofar as the court vacated Hammer's death sentence, and affirm the judgment insofar as the court denied relief with regard to the guilty plea.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney
Middle District of Pennsylvania

FREDERICK E. MARTIN
Assistant U.S. Attorney
Middle District of Pennsylvania

/s/ Gwynn X Kinsey, Jr.

_____

GWYNN X KINSEY, JR.
Capital Case Unit
Criminal Division
U.S. Department of Justice
Room 336
1331 F Street, N.W.
Washington, D.C. 20530
Telephone: (202) 353-9721
Fax: (202) 353-9779
Email: Gwynn-Charlie.Kinsey@usdoj.gov

Dated: April 28, 2008

## CERTIFICATE OF WORD COUNT, IDENTICAL COMPLIANCE, AND VIRUS CHECK

I HEREBY CERTIFY that (a) this brief contains 2,673 words; (b) the text of the electronic brief filed in this case is identical to the text of the paper copies of the brief; and (c) on this 28th day of April, 2008, I ran the McAfee VirusScan Enterprise, version 5200.2160, virus detection program on the file containing this electronic brief, and it indicated that no virus was detected.

/s/ Gwynn X Kinsey, Jr.

_____

GWYNN X KINSEY, JR.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of April, 2008, copies of the foregoing Reply Brief for the United States were served on Appellant's counsel by overnight commercial delivery addressed to:

Anne L. Saunders, Esquire
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101-2540

Michael Wiseman, Esquire
Federal Court Division
Capital Habeas Corpus Unit
Defender Association of Philadelphia
Curtis Center Building, Suite 545 West
Independent Square West
Philadelphia, PA 19106

/s/ Gwynn X Kinsey, Jr.

_____

GWYNN X KINSEY, JR.